## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**LEXAN MCDOWELL,**

    **Plaintiff,**

    **v.**

**iCALLIDUS, INC.,**

    **Defendant.**

**Case No. MJM-22-3172**

## <u>MEMORANDUM OPINION</u>

Plaintiff Lexan McDowell, acting pro se, brings this action against defendant iCallidus, Inc., alleging violations of the Equal Pay Act, race and gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliation under Title VII, and violations of Maryland wage laws. Am. Compl., ECF No. 14. Plaintiff's claims arise out of her employment with Defendant from February 2020 through April 2021. *Id.* ¶¶ 17, 79. Plaintiff filed her initial Complaint in the Circuit Court for Montgomery County, Maryland, on August 15, 2022. ECF No. 1. Defendant subsequently removed the action to this Court on December 8, 2022, under 28 U.S.C. § 1331. *Id.* Thereafter, on February 24, 2023, Plaintiff filed the operative Amended Complaint. ECF No. 14.

Currently pending is Defendant's Motion to Dismiss (the "Motion"). ECF No. 20. The Motion is fully briefed, and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023).[1] For the reasons stated below, the Court will GRANT IN PART and DENY IN PART Defendant's Motion.

---

[1] In addition to a response in opposition to the Motion (ECF No. 22), Plaintiff filed a surreply memorandum (ECF No. 24) after Defendant filed a reply (ECF No. 23). Under Loc. R. 105.2(a), "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed." On this basis, Defendant filed a Motion to Strike Plaintiff's Surreply. ECF No. 25. This motion will be granted because Plaintiff did not request leave to file a surreply. Plaintiff's surreply will be stricken and will not be considered in deciding Defendant's Motion to Dismiss.

Plaintiff's claims of Title VII race discrimination and retaliation will be DISMISSED without prejudice. Remaining claims under the Equal Pay Act and Maryland wage laws shall proceed.

## I.    BACKGROUND

The following facts are drawn from the Amended Complaint and documents incorporated into the Amended Complaint by reference.[2]

Plaintiff is an African American woman of Caribbean descent. Am. Compl., ECF No. 14, ¶ 5. Plaintiff was employed by iCallidus from February 2020 through April 2021. *Id.* ¶¶ 17, 79. Plaintiff was initially hired as a Business Analyst "with the intentions of a transition to Project Manager within six to 12 months." *Id.* ¶ 23. Plaintiff was promoted to Project Manager on May 10, 2020, without a corresponding raise. *Id.* ¶¶ 19, 28, 56. In January 2021, Plaintiff received a ".05% raise bringing her new salary to $52,250." *Id.* ¶ 44.

Plaintiff alleges her predecessor and successor—respectively, Sean Hall, a black man, and Miranda Bell, a white woman—were overpaid relative to Plaintiff in the same position. *Id.* ¶¶ 46, 55. Specifically, Hall made "six figures" while holding the "same job title" as Plaintiff. *Id.* ¶ 46. Hall later told Plaintiff he made approximately $160,000 to $175,000 while working at iCallidus. *Id.* Then, following Plaintiff's resignation, Defendant placed Bell—formerly a Human Resources generalist—as Plaintiff's temporary replacement. *Id.* ¶ 55. Defendant gave Bell a $10,000 raise, making her total salary $50,000. *Id.* ¶ 55. Bell, however, did not have as many responsibilities as

---

[2]    When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must take the factual allegations in the complaint as true, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016), and consider documents either attached to the complaint as exhibits or incorporated by reference, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

Additionally, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). Thus, the Court will not consider any new factual allegations or legal claims stated in Plaintiff's opposition (ECF No. 22), but will "restrict[] its consideration to allegations which do appear in the complaint."

Plaintiff did during her tenure. *Id.* Thereafter, Bell maintained her increased salary, even though she was returned to her previous role as a junior HR generalist. *Id.*

The Amended Complaint discusses several disagreements between Plaintiff and iCallidus's CEO Liliana Phortand and CFO James Kim. Specifically, Plaintiff disagreed with Phortand and Kim regarding the scope of Plaintiff's job responsibilities and adequacy of her prior experience. *Id.* ¶ 56. "Defendant added multiple duties to Plaintiff's [workload] from day to day." *Id.* ¶ 61. "Phortand demanded that Plaintiff complete the duties of another department rather than having [] HR personnel" complete certain tasks. *Id.* ¶ 70. This was the case even though white employees were not similarly overworked. *Id.* Plaintiff generally alleges that Phortand and Kim were influenced by "bias and hatred towards black women." *Id.* Further, "Phortand and Kim spoke to all black women like dogs or as though they were . . . slave pushers. Most of their comments/remarks were condescending, intimidating and unwarranted." *Id.* ¶ 74. Phortand's "actions were solely to intimate[] Plaintiff . . . ." *Id.* ¶ 56.

Plaintiff alleges that Phortand treated black employees, and particularly black women, differently than other employees. *Id.* ¶¶ 51, 70–74. Phortand sought to "exert her dominance over the African American female." *Id.* ¶ 70. On multiple occasions, Phortand "belittled Plaintiff and other African American colleagues by repeatedly stating she was the 'CEO/President' and that 'we/you' will do exactly what I ask you to do. . . . Phortand did not communicate to female colleagues of other races in this manner." *Id.* ¶ 51. Phortand also regularly called black women during off-hours or on weekends and demanded their availability. *Id.* ¶ 71.

The Amended Complaint describes several workplace incidents. On one occasion, Phortand asked Nicole Sharp—Plaintiff's black female coworker—"which gentleman" gave Sharp her "expensive Cartier bracelet . . . [a]n implication that a woman of color can only have good

things" if purchased by a man. *Id.* ¶ 67. On another occasion, Phortand insisted that an African American employee miss her dialysis appointment to attend an HR meeting. *Id.* ¶ 69. The former CEO, Hetal Patel, an Indian male, told Sharp that "he did not see her, a black female, as a person who cooks, but rather someone that walks around with [her] nails and hair done." *Id.* ¶ 66. Phortand's husband, Corey Faustin—Executive VP of Defendat's sister company, Aurotech— "made suggestions of sleeping with African American women that had good rapport with the government to keep business opportunities flowing." *Id.* ¶ 68. In another incident, Plaintiff discovered that Defendant "was paying less than the [Service Contract Act] rate" for certain black employees relative to Indian employees. *Id.* ¶ 65. Defendant asked Plaintiff "to overlook" the payment issue. *Id.* Relatedly, a Department of Labor audit uncovered that Defendant was "at fault for underpaying a group of [African American] government contract workers," though Raven's Group (Plaintiff's subsequent employer) was found legally liable. *Id.* ¶ 47.

Plaintiff also alleges she was subject to gender discrimination. Kim told Plaintiff that "she was set up for failure with her new position," which Phortand "referred to as a glorified secretary to Program Manager, Nicole Sharp." *Id.* ¶ 56. Kim told Plaintiff she would not receive a raise even though her salary was significantly below that of other comparable positions in Maryland. *Id.*

In September 2020, Plaintiff internally reported the alleged discrimination. *Id.* ¶¶ 57–58. On May 26, 2022, the EEOC issued Plaintiff a Right to Sue Letter. *Id.* ¶ 42; ECF No. 14-10.

In January 2021, "Plaintiff's [accrued but unused] PTO was taken" without explanation. *Id.* ¶ 76. Plaintiff was "deprived of her earned PTO" because the PTO regulations changed unexpectedly to a "use or lose" policy in 2021. *Id.* ¶¶ 77–78. Following her resignation, "Plaintiff's earned PTO from January 1 through April of 2021 were withheld by Defendant . . . in retaliation [for] quitting after being disrespected." *Id.* ¶ 81. Defendant claimed that the employee handbook

required Plaintiff "to work the last [three] days of her employment" to receive the PTO. *Id.* Plaintiff was unaware of any such provision. *Id.* Plaintiff also alleges she was not properly compensated for working overtime. *Id.* ¶ 78.

Plaintiff brings federal claims for violations of the Equal Pay Act; for race and sex discrimination and retaliation in violation of Title VII and 42 U.S.C. §§ 1981, 1983; and for violations of the Fair Labor Standards Act ("FLSA"). She also brings Maryland state law wage payment claims. Defendant moves to dismiss all claims.

## II.    LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not

5

countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

Ordinarily, a court "is not to consider matters outside the pleadings or to resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). But courts may "consider documents that are explicitly incorporated into the complaint by reference" or "document[s] submitted by the movant" that are "integral to the complaint[,]" if "there is no dispute about the document's authenticity." *Goines v. Valley Cmty.*

6

*Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). Additionally, "courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 502–03 (D. Md. 2019).

Finally, filings by pro se litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). The Court will not "attempt to discern the unexpressed intent of the plaintiff," but will "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (internal quotations and citation omitted).

## III.    DISCUSSION

### A.    Equal Pay Act (Count I)

Count I alleges "Defendant violated the [Equal Pay Act (EPA)] by paying lower wages to Plaintiff . . . than it paid to [a] male employee for equal work that required equal skill, effort, and responsibility . . . under similar working conditions." Am. Compl. ¶ 33. Under the EPA:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1).

To prove a violation of the EPA, a plaintiff must make a prima facie showing of three elements: "(1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). "Generally, this comparison must be made factor by factor with a specific male comparator." *Kramer v. Bd. of Educ.*, 788 F. Supp. 2d 421, 428 (D. Md. 2011). A prima facie showing "creates a presumption of discrimination . . . ." *Id.* Thus, a plaintiff "need not prove that the employer acted with discriminatory intent to obtain a remedy under [the EPA]." *Id.* (citations omitted). "Once a plaintiff has made the required prima facie showing, under the EPA, the burdens of production *and* persuasion shift to the defendant-employer to show that the wage differential was justified by one of four affirmative defenses listed in the statute." *Id.* (citing *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 344 (4th Cir. 1994)).

Here, Plaintiff identifies her male predecessor Hall as her comparator. *See* Am. Compl. ¶¶ 19, 39, 44, 46, 62, 82; ECF No. 14-30 (Unsigned Statement of Sean Hall). Plaintiff specifically alleges that she was paid between $50,000 and $52,250 during her employment. Am. Compl. ¶ 44. She alleges Hall was paid between $160,000 and $175,000. *Id.* at ¶ 46. These allegations are sufficient to satisfy the first element of a prima facie showing.

As to the second element, "a plaintiff need not show that her position and that of her male comparator are identical in every respect." *Kramer*, 788 F. Supp. 2d at 428. Rather, "a plaintiff must show that the jobs involve a 'common core of tasks' or that 'a significant portion of the two jobs is identical. The inquiry then turns to whether [any] differing or additional tasks make the work substantially different.'" *Id.* (quoting *Brewster v. Barnes*, 788 F.2d 985, 991 (4th Cir. 1986)).

Yet still, "[e]quality under the [EPA] is a demanding threshold requirement. *Spencer v. Va. State Univ.*, 919 F.3d 199, 203 (4th Cir. 2019). As explained in *Spencer*:

> [A finding of "equality"] requires a comparator to have performed work "virtually identical" (or the apparent synonym, "substantially equal") to the plaintiff's in skill, effort, and responsibility. *Wheatley v. Wicomico Cty.*, 390 F.3d 328, 332–33 (4th Cir. 2004). Similarity of work is not enough; the [EPA] explicitly distinguishes between the work itself (which must be "equal") and the conditions of work (which need only be "similar"). 29 U.S.C. § 206(d)(1). The [EPA] does not provide courts with a way of evaluating whether distinct work might have "comparable" value to the work the plaintiff performed. *See Wheatley*, 390 F.3d at 333; *see also Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 771 (7th Cir. 2007) (Posner, J.) (explaining that, when trying to identify "comparable" pay for unequal work, there are "no good answers that are within the competence of judges to give"). Instead, the [EPA's] inference of discrimination may arise only when the comparator's work is equal to the plaintiff's.

919 F.3d at 203–04 (emphasis added). Critically, "a plaintiff may not rely on broad generalizations at a high level of abstraction." *Id.* at 204 (citing *Wheatley*, 390 F.3d at 332); *see also Md. Ins. Admin.*, 879 F.3d at 121 ("[S]haring a job title and a job description is not dispositive" of the issue of "substantially equal work.").

Here, the Amended Complaint states that Plaintiff and Hall had the same job title: Project Manager. Am. Compl. ¶ 46. It further indicates that Plaintiff replaced Hall after Hall was terminated. *Id.* ¶¶ 44, 56. The Fourth Circuit has recognized that "[a] plaintiff may make her prima facie case by comparing her salary to that of her predecessor or successor." *Brinkley-Obu*, 36 F.3d at 343. However, the mere fact that Plaintiff replaced Hall does not necessitate a finding that their job duties were substantially equal for EPA purposes. *See, e.g.*, *Emswiler v. Great Eastern Resort Corp.*, 602 F. Supp. 2d 737, 752 (W.D. Va. 2009) (finding that the plaintiff's successor's duties were not "substantially equal" where successor had additional "core responsibilities"); *but see Kling v. Montgomery Cnty.*, 324 F. Supp. 3d 582, 592 (D. Md. 2018) (finding that "the Court

should not have to disregard a gender-based discrepancy in salaries simply because the higher paid position has evolved or no longer exists").

The Amended Complaint fails to explain Plaintiff's or Hall's responsibilities beyond "managing contracts." It states that Plaintiff completed equal or more work than Hall "that require[d] equal skill, effort, and responsibility . . . ." *Id.* ¶ 21. It states that Plaintiff "carried the responsibilities of Project Manager, Program Manager, HR back office, auditor, business analyst, Sharepoint and document creator and payroll personnel . . . ." *Id.* ¶ 28. However, it fails to elucidate what those responsibilities were, other than "managing government contracts" in the abstract. *Id.* The overlapping responsibility of "managing government contracts," on its own, is insufficient to meet the EPA's "demanding threshold" of equality.

Nonetheless, when viewing Plaintiff's Complaint and the exhibits together, Plaintiff alleges she took over all of Hall's responsibilities following Hall's termination. That is, Plaintiff alleges Hall was responsible for three government contracts. Am. Compl. ¶ 19. She states that "Hall was terminated and replaced by Plaintiff." *Id.* ¶ 56. Exhibit AE—which is an unsigned statement allegedly attributable to Hall—states that "the entirety of my [responsibilities] were transferred to [Plaintiff] after my departure." ECF No. 14-30 at 1. Accepting this statement as true, the Amended Complaint sufficiently states that Plaintiff and Hall had "virtually identical" responsibilities, even though Plaintiff alleges she had additional responsibilities. *See, e.g.*, *Kramer*, 788 F. Supp. 2d at 423 (irrelevant to court's analysis that the plaintiff took "on additional tasks not required of her male counterparts"). Indeed, as Plaintiff argues, the fact that Plaintiff replaced Hall indicates that "she assumed the same responsibilities, duties and tasks" for which Hall would have been responsible during his employment. ECF No. 22 at 19; *see also Kramer*, 788 F. Supp. at 429 (finding that, "at least for the purpose of surviving a motion to dismiss, alleging 'identical tasks'

conveys the same meaning as 'equal work'"). Because Plaintiff alleges she took over the entirety of Hall's responsibilities after his termination, she satisfies the "equal work" element for pleading purposes.

The third element requires similar working conditions. "Working conditions" may differ depending on the relevant industry. *See, e.g.*, *Wetzel v. Liberty Mut. Ins. Co.* 449 F. Supp. 397 (W.D. Pa. 1978) (finding that credible expert evidence of the technical meaning of the phrase "working conditions" may be influential). Differences in travel and on-site working requirements may, for example, impact an employee's working conditions. *See, e.g.*, *Cooke v. United States*, 85 Fed. Cl. 325, 347 (Ct. Fed. Cl. 2008) (finding that "[a]ny temporary change in working conditions resulting from travel to another . . . office or . . . site does not rise to the level" of disparate working conditions); *but see Timmon v. Servicemaster Co.*, Civ. No. 96-1655, 1997 WL 306778, *1 (finding that working conditions of employee whose duties included "travel, face-to-face customer contact, and . . . on-site evaluation" were dissimilar from tasks of employee that conducted telephone sales) (6th Cir. 1997).

Here, the Amended Complaint does not specifically describe Hall's working conditions. However, the Amended Complaint alleges Plaintiff took over the entirety of Hall's responsibilities after he was terminated. Drawing reasonable inferences in Plaintiff's favor, the Court finds that she has sufficiently alleged that her and Hall's working conditions were similar. Defendant does not argue that Plaintiff's and Hall's workplaces were different.

Accordingly, the Amended Complaint states a plausible claim that Defendant violated the EPA, and Defendant's Motion will be denied as to Count I.

**B.  Title VII Discrimination (Counts II & III)**

Title VII prohibits an employer from discriminating against an individual with respect to employment based upon the individual's race, color, religion, sex, or national origin, and from retaliating against an individual for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e–2(a)(1) (anti-discrimination provision); 42 U.S.C. § 2000e–3(a) (anti-retaliation provision). Specifically, Title VII provides that it is an "unlawful employment practice" for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Additionally, it is unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]" or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.A. § 2000e-3(a).

The plaintiff bears the burden of proving her claims through one of two methods. The plaintiff may offer "direct or indirect" evidence of discriminatory or retaliatory animus under "ordinary principles of proof[,]" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or follow the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021). The Court may consider both methods of proving discrimination when evaluating a plaintiff's allegations under Rule 12(b)(6). The plaintiff, however, need not commit to either of the two approaches at the motion-to-dismiss stage. *Chen v. Md. Dep't of Health & Mental Hygiene*, Civ. No. ELH-15-1796, 2016 WL 4539204, at *17 (D. Md. Aug. 29, 2016).

Under *McDonnell-Douglas*, the precise formulation of the required prima facie showing will vary in "differing factual situations." 411 U.S. at 802 n.13. Nonetheless, the plaintiff is generally required to show that the employer took adverse action against her "under circumstances which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs. v. Burdine*, 450 U.S. 248, 253 (1981). If a plaintiff establishes a prima facie case, a presumption of illegal discrimination or retaliation arises, and the burden of production shifts to the employer to state a legitimate, non-discriminatory reason for its adverse action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. To prevail, the plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Id.* at 256.

At the motion-to-dismiss stage, a plaintiff need not establish a prima facie case of discrimination or retaliation under *McDonell-Douglas* but must satisfy the pleading standard established in *Iqbal* and *Twombly*. *See Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for all civil actions, . . . and it applies to antitrust and discrimination suits alike . . . .") (citations omitted).[3] That is, a plaintiff does not need to allege facts sufficient to establish all elements of a prima facie case of employment discrimination or retaliation to avoid dismissal under Rule (12)(b)(6). She must, however, allege sufficient facts to "'state[] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct'" and "to raise a right to

---

[3]    Notably, the *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993). As the Supreme Court explained in *Swierkiewicz v. Sorema*, the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510 (2002).

relief above the speculative level . . . ." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012) (quoting *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. at 555). That is, she must allege sufficient facts to support a reasonable inference that an adverse action was motivated by unlawful discrimination or retaliation. *See McCleary Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–86 (4th Cir. 2015); *Coleman*, 626 F.3d at 190 (holding that a complaint must "establish a plausible basis for believing . . . that race was the true basis for [the adverse employment action]").

To establish a prima facie case of discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) an adverse employment action by the employer; (3) satisfactory job performance at the time of the adverse employment action; and (4) that the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015) (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)). The fourth element is met if "similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

"[S]ome adverse employment action is required" to prevail on a claim of discrimination under Title VII. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). The employer's action must "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment." *Id.* (quoting *James*, 368 F.3d at 375). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v.*

14

*Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Additionally, the adverse employment action must have "occurred under circumstances that raise a reasonable inference of unlawful discrimination . . . ." *Gaines v. Balt. Police Dep't*, Civ. No. ELH-21-1211, 2023 WL 2185779, at *12 (D. Md. Feb. 22, 2023) (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021)). An inference of unlawful discrimination is supported where "similarly-situated employees outside the protected class receive[] more favorable treatment." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *BFI Waste Servs.*, 375 F.3d at 295). "'[W]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination,' the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects." *Gaines*, 2023 WL 2185779, at *12 (quoting *Swaso*, 698 Fed. App'x at 748); *see also Asi v. Info. Mgmt. Grp., Inc.*, Civ. No. GLR-18-3161, 2019 WL 4392537, at *6 (D. Md. Sept. 13, 2019) (pleading disparate-treatment discrimination claim requires plaintiff to "identify the proposed comparator and establish a plausible basis for believing the employee was actually similarly situated") (cleaned up).

### 1. Gender Discrimination (Count II)

Under Title VII, an employer cannot "discriminate against any individual with respect to [her] compensation . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Unlike the EPA, Title VII "requires establishing intentional discrimination . . . using [either] direct or circumstantial evidence . . . or the burden-shifting framework of [*McDonnell Douglas*] 'to develop an inferential case' of discriminatory intent." *Spencer*, 919 F.3d at 207 (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996)).

"Where, as here, the prima facie case of wage discrimination is based on comparators, the plaintiff must show that she is paid less than men in similar jobs." *Spencer*, 919 F.3d at 207 (citing *Brinkley-Obu*, 36 F.3d at 343). Title VII's "similarly" requirement is less demanding than the EPA's "equality" requirement. *See id.* "In contrast to the EPA, a plaintiff proceeding under Title VII is required to show only that her job and the proposed comparators' jobs are 'similar rather than equal'; however, she still must show that 'the proposed comparators are not just similar in some respects, but similarly-situated in all respects.'" *Lee v. Belvac Prod. Mach., Inc.*, No. 20-1805, 2022 WL 4996507, at *2 (4th Cir. Oct. 4, 2022) (citing *Spencer*, 919 F.3d at 207).

There is no bright-line rule to determine whether two jobs are similar for "comparator" purposes under Title VII. *Spencer*, 919 F.3d at 207. Nonetheless, "courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Id.* (citing *Bio v. Fed. Express Corp.*, 424 F.3d at 593, 597 (7th Cir. 2005)).

As discussed above, the Amended Complaint is sufficient to satisfy the "equality" requirement of the EPA. Accordingly, it is also sufficient to satisfy the less demanding "similarly" requirement of Title VII. The Amended Complaint therefore states a plausible claim that Defendant discriminated against Plaintiff based on her sex or gender in violation of Title VII, and Defendant's Motion will be denied as to Count II.

## 2.  Race Discrimination (Count III)

Title VII prohibits race discrimination in employment. *See* 42 U.S.C. § 2000e-2. "Discrimination based upon race is generally presented in two distinct scenarios: a racially hostile work environment or disparate treatment." *Chambers v. Grimesey*, No. 1:18CV134, 2019 WL

16

688317, at *5 (M.D.N.C. Feb. 19, 2019), *report and recommendation adopted sub nom. Chambers v. Grimesay*, No. 1:18-CV-134, 2019 WL 13297200 (M.D.N.C. Mar. 26, 2019). Claims for disparate treatment and hostile work environment fall under § 2000e-2. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205–06 (4th Cir. 2019).

In this case, it is unclear whether Plaintiff alleges a hostile work environment, disparate treatment, or both. The Court will address both theories in turn.

### a. Disparate Treatment

"Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race." *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994). "To establish a prima facie case of disparate treatment, [Plaintiff] must show: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Perkins*, 936 F.3d at 207 (citing *Coleman*, 626 F.3d at 190). To survive a motion to dismiss, the Amended Complaint must sufficiently allege that race "actually motivated the employer's [adverse employment] decision." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

Plaintiff fails to state a claim for disparate treatment based on race. Even assuming Plaintiff's work performance was satisfactory,[4] and she experienced an adverse employment action (*i.e.*, lack of promotion and/or raise), the Amended Complaint does not allege that Plaintiff experienced different treatment relative to similarly situated employees of other races. Sean Hall is a black male and, therefore, cannot be a comparator for race discrimination purposes. The only other potential comparator identified in the Amended Complaint is Miranda Bell, a white woman, whom Plaintiff alleges received unwarranted raises that were disparate from those that Plaintiff received. *Id.* ¶¶ 55. Bell is an insufficient comparator for Title VII purposes, however, because the Amended Complaint does not allege that Plaintiff and Bell were "similarly-situated in all respects.'" *Lee*, 2022 WL 4996507, at *2. Indeed, Bell was a "Junior HR Resource Generalist[,]" while Plaintiff was a Project Manager. *Id.* ¶ 16. Bell took over as Plaintiff's "temporary replacement" when Plaintiff resigned but did not hold the same responsibilities as Plaintiff and managed fewer contracts. *Id.* ¶ 55. Further, Bell subsequently re-assumed her prior role in HR. *Id.*

Even if Bell was a sufficient comparator, the Amended Complaint states that Bell was paid a lower salary than Plaintiff. *Id.* ¶¶ 44, 55. Specifically, Plaintiff made $52,250 per year at the time she resigned. *Id.* ¶ 44. When Bell took over as Plaintiff's temporary replacement, she made $50,000 per year. *Id.* ¶ 55. The Amended Complaint suggests, however, that Defendant treated

---

[4]     The Amended Complaint is contradictory as to Plaintiff's work performance. It does state that "Plaintiff received multiple accolades" and that "she had done tremendous work that [former CEO Patel] was very impressed with." Am. Compl. ¶¶ 31–32. It further alleges "Plaintiff's performance granted iCallidus $13 million in contract extensions/renewals." *Id.* ¶ 44. However, it also acknowledges numerous instances in which Plaintiff and her supervisors—namely Phortand and Kim—disagreed regarding Plaintiff's duties, and Plaintiff refused certain tasks she was asked to complete. *See, e.g., id.* ¶ 29. For example, she reassigned HR duties to a colleague and was rebuked by Phortand. *Id.* ¶ 54. Plaintiff also told Phortand "she would no longer use her personal vehicle or [FedEx] account information [to] pick up or collect company equipment from employees that were no longer employees of iCallidus." *Id.* ¶ 59. Defendant told Plaintiff she had poor time management skills and lacked experience, further indicating that her performance may have been unsatisfactory. *Id.* ¶ 56. Nonetheless, for purposes of adjudicating the Motion, the Court will assume Plaintiff's job performance was satisfactory.

Bell more favorably by giving Bell a $10,000 raise when she assumed Plaintiff's responsibilities, *id.* ¶ 55, while Plaintiff only received a $2,250 raise when she was promoted in January 2021, *id.* ¶ 44. This comparison is inapposite because Bell's more substantial raise was made in connection with Bell's re-assignment to a completely different role, from HR Generalist to Project Manager.

Critically, there is no support among the facts alleged in the Amended Complaint for a reasonable inference that the at-issue raises were motivated by race. Even though Bell retained the increased rate when she returned to her prior position, the Amended Complaint fails to allege or suggest that Defendant's decision-making with respect to compensation was attributable to race.[5] Thus, Plaintiff fails to state a Title VII claim for on disparate treatment based on race.

### b. *Hostile Work Environment*

To prevail on a racially hostile work environment claim, a plaintiff must demonstrate: "(1) she experienced unwelcome harassment; (2) the harassment was based on her . . . race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Evans*

---

[5]    For this reason, Plaintiff's § 1981 claims must also fail. Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). These rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law[,]" 42 U.S.C. § 1981(c), including by retaliation for opposing race discrimination in employment, *see Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 172 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008)). "To state a claim for race discrimination under § 1981, a plaintiff must allege 1) membership in a protected class; 2) satisfactory job performance; 3) adverse employment action; and 4) different treatment from similarly situated employees outside the protected class." *Gaines v. Balt. Police Dep't*, Civ. No. ELH-21-1211, 2023 WL 2185779, at *24 (D. Md. Feb. 22, 2023) (quoting *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 703 (4th Cir. 2023)) (cleaned up). Here, Plaintiff's § 1981 race discrimination claims fail because Plaintiff fails to allege with sufficient specificity that she was treated differently from similarly situated employees outside the protected class. *See Giles*, 59 F.4th at 704 (Section 1981 plaintiff "must present a similarly situated comparator who received more favorable treatment").

       Plaintiff also fails to state a claim of race discrimination under 42 U.S.C. § 1983 because she fails to allege that Defendant is a state actor or acted "under color of [State] statute, ordinance, regulation, custom, or usage . . . ." *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 115 (4th Cir. 2022).

*v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (citing *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)). Claims of racial harassment require proof of a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).

Regarding the first element, unwelcome harassment, the Amended Complaint states that—as to Plaintiff specifically[6]—"Phortand belittled Plaintiff and other African American female colleagues by repeatedly stating she was the 'CEO/President' and that 'we/you' will do exactly what I ask you to do . . . ." Am. Compl. ¶¶ 64, 72. "Phortand did not communicate with male [colleagues or colleagues of other races] in this manner. . . ." *Id.* ¶ 64. Further, Plaintiff and her black female colleagues were "spoken to in a hostile manner and told by Phortand to answer [their] personal phones whenever she called regardless of time or day." *Id.* ¶ 72. "Phortand and Kim spoke to all black women like dogs or as though they were . . . slave pushers. Most of their comments/remarks were condescending, intimidating and unwarranted." *Id.* ¶ 74. Phortand allegedly behaved this way "[b]ecause of her bias and hatred towards black women . . . [and] to exert her dominance over the African American female . . . ." *Id.* ¶ 70. Finally, the Amended

---

[6]    The Amended Complaint describes certain incidents involving Plaintiff's black female coworkers. *See, e.g.*, Am. Compl. ¶¶ 65–72. None of the allegations regarding Plaintiff's coworkers can support Plaintiff's showing showing of unwelcome conduct. A plaintiff cannot recover for "episodes of . . . racial harassment that [are] not directed at" the plaintiff, even if such episodes are "egregious." *Id.*

Similarly, Plaintiff cannot recover for allegations regarding statements made by Corey Faustin, who is not employed by Defendant. Am. Compl. ¶ 68. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) ("In measuring the severity of harassing conduct, the status of the harasser may be a significant factor . . . ."); *McIver*, 42 F.4th at 410 (harassing comments by non-supervisor with "no degree of control over [the plaintiff] [carry] less weight in the hostile-workplace analysis").

Complaint alleges that Defendant assigned Plaintiff—who was overworked—additional work while her white coworker, Miranda Bell, "had no assignments." *Id.* ¶ 71.

It is unclear whether Plaintiff "voic[ed] her objection to the alleged harasser or to the employer" regarding all of the alleged unwelcome conduct described above. *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 329 (4th Cir. 2018). Plaintiff did, however, report certain incidents to HR in September of 2020, which included complaints of racial discrimination. *Id.* ¶ 58. Such complaints would demonstrate that the conduct described in the complaints was unwelcome, which is sufficient to satisfy the first element of a hostile work environment claim at this stage.

Plaintiff's hostile work environment claim fails, however, because the unwelcome conduct is not alleged to have been sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. The "severe or pervasive" element includes both subjective and objective components. *See Harris*, 510 U.S. at 21–22; *Perkins*, 936 F.3d at 207–08; *Strothers*, 895 F.3d at 331. "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). A plaintiff "must clear a high bar in order to satisfy the [objectively] severe or pervasive test." *Perkins*, 936 F.3d at 208. "[W]hen determining whether the harassing conduct was objectively severe or pervasive," a court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Sunbelt*, 521 F.3d at 315-16). The "severe or pervasive" analysis is not, and "by its nature cannot be, a mathematically precise test." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22). However, "[a] discriminatorily abusive work environment . . . can and often will detract from

21

employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris*, 510 U.S. at 22.

Here, the facts alleged in the Amended Complaint fail to satisfy the "high bar" necessary for the "severe or pervasive" test. Plaintiff alleges that her supervisor's "repeated" remarks—such as, "[you] will do exactly what I ask you to do[,]" and "answer [your] personal phones whenever [Phortand] call[s] regardless of time or day"—were "belittling," "condescending, intimidating and unwarranted." Am. Compl. ¶¶ 51, 64, 72, 74. These remarks may have been offended Plaintiff, but a supervisor's "rude treatment," *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006), or "callous behavior," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), alone does not suffice to create liability for a racially hostile work environment. Title VII "does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). Plaintiff fails to allege plausibly that the complained-of remarks occurred so frequently as to impact her work environment or work performance. The remarks were not "[so] extreme [as] to amount to a change in the terms and conditions of employment." *Sunbelt*, 521 F.3d at 315 (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, (1998)). To the contrary, the challenged remarks more accurately reflect "the ordinary tribulations of the workplace." *Hoffman v. Baltimore Police Dep't*, 379 F. Supp. 2d 778, 791 (D. Md. 2005) (citation omitted). Accordingly, Plaintiff fails to satisfy the third element of the hostile work environment test.

Because the Amended Complaint fails to state a plausible claim that Defendant discriminated against Plaintiff based on her race in violation of Title VII, Defendant's Motion will be granted as to Count III, which will be dismissed without prejudice.[7]

### C. Count IV: Wage Payment Laws

Plaintiff raises a claim of "funds withheld." Am. Compl. ¶¶ 76–84. The statutory provision under which Plaintiff brings this claim is unclear, but the relevant allegations appear to implicate either the Maryland Wage Payment and Collection Law ("MWPCL") or Maryland Wage and Hour Law ("MWHL"). *See* Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* (MWPCL) & 3-401 *et seq.* (MWHL). They may also implicate the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*

This Court recently explained:

> The MWHL generally governs minimum wages and overtime in the State of Maryland. . . . It authorizes an employee to bring a civil action against an employer to recover unpaid wages due under the statute as well as liquidated damages and attorneys' fees and costs. Md. Code, Lab. & Empl. § 3-427(a); *see generally Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2003).
>
> The MWPCL governs . . . the payment of wages upon termination of employment in Maryland. *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 670 (D. Md. 2011) (citing [in relevant part, Md. Code, Lab. & Empl. § 3-505]). It "protects employees from wrongful

---

[7]    The Amended Complaint does not appear to assert a claim for retaliation under Title VII. In the "Complaint for Employment Discrimination" cover page attached to her Complaint, Plaintiff did not check the box for "Retaliation" under "discriminatory conduct of which I complaint in this action . . . ." ECF 14 at 32. Insofar as Plaintiff intends to present a Title VII retaliation claim, the Court finds that the Amended Complaint fails to state a plausible claim for relief.

"To establish a prima facie claim of retaliation, a plaintiff must show: (1) that [she] engaged in protected activity, (2) that the employer took a materially adverse action against [her] and (3) there is a causal connection between the protected activity and the adverse action." *Perkins*, 936 F.3d at 213. Plaintiff alleges she made "reports" of discrimination. Am. Compl. ¶¶ 57–58. These reports may constitute protected activity. Nonetheless, the Amended Complaint fails to allege facts to show or support an inference of any causal connection between Plaintiff's submission of internal complaints and any adverse action. The Amended Complaint alleges that Defendant withheld PTO "in retaliation [for Plaintiff] quitting after being disrespected." Am. Compl. ¶ 81. Resigning from employment is not a protected activity.

> withholding of wages upon termination." *Stevenson v. Branch Banking and Trust Corporation, t/a BB&T*, 159 Md. App. 620, 861 A.2d 735, 743 (Md. Ct. Spec. App. 2004) (citing Md. Code, Lab. & Empl. § 3-505). Importantly, the MWPCL does not focus on "the amount of wages payable but rather the duty . . . to pay all that is due following termination of the employment." *Friolo*, 373 Md. at 513, 819 A.2d at 362. An employee may bring a civil action to recover unpaid wages from an employer who withholds wages in violation of the MWPCL. Md. Code, Lab. & Empl. § 3-507.2(a).

*Acevedo v. McCalla*, Civ. No. MJM-22-1157, 2023 WL 1070436, at *5 (D. Md. Jan. 27, 2023).

Under the MWPCL, "wage" means "all compensation that is due to an employee for employment." Md. Code Ann., Lab. & Empl. § 3-501(c). "The law specifically references 'accrued leave' and states that an employer is required to pay it unless certain exceptions are satisfied . . . ." *Hencin v. Avant Diagnostics, Inc.*, Civ. No. GJH-19-2546, 2020 WL 5526582, at *6 n.6 (D. Md. Sept. 14, 2020) (quoting Md. Code Ann., Lab. & Empl. § 3-505). Thus, "[p]aid time off . . . may be covered under the MWPCL." *Id.*; *see also Karanja v. BKB Data Sys., LLC*, Civ. No. DKC-14-0573, 2015 WL 993462, at *8 (D. Md. Mar. 4, 2015) (denying motion for summary judgment where factual dispute remained regarding the amount owed for wages earned and PTO accrued).

"An employer is not required to pay the employee accrued leave time upon termination if: [1] the employer has a written policy limiting such compensation, [2] the employer notified the employee of its leave benefits, and [3] the employee is not entitled to leave pay based on the terms of the employer's policy." *Karanja*, 2015 WL 993462, at *8 (citing Md. Code Ann., Lab & Empl. § 3-505(b)).[8]

Plaintiff alleges that some PTO (paid time off) hours she earned were not credited to her, that she was not compensated upon her resignation for other PTO hours she earned but did not use,

---

[8]    Section 3-505 applies to resignations as well as terminations. *See, e.g.*, *Medex v. McCabe*, 811 A.2d 297 (Md. 2002).

and that she was not compensated for overtime hours she worked. The Court finds Plaintiff's allegations detailed with sufficient facts to state a claim for relief under the MWPCL and the MWHL. Defendant disputes whether Plaintiff was entitled to her accrued but unused PTO based on Defendant's policies, but this dispute cannot be resolved on a motion to dismiss. Defendant's Motion will therefore be denied as to the state law wage claims.

The Amended Complaint also references the Fair Labor Standards Act. Am. Compl. at 31. The FLSA was enacted to protect "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (citation omitted). "[B]ecause the Act is remedial and humanitarian in purpose, it should be broadly interpreted and applied to effectuate its goals." *Id*. (internal quotation marks and citation omitted). "The two central themes of the FLSA are its minimum wage and overtime requirements." *Monahan v. Cnty. of Chesterfield, Va*., 95 F.3d 1263, 1266 (4th Cir. 1996). The Act requires that employers pay employees the minimum hourly wage "for all hours worked." *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (citation omitted). Additionally, employers must pay each employee "at a rate not less than one and one-half times the regular rate" for each hour worked in excess of forty per work week. *Schultz*, 466 F.3d at 304 (citing 29 U.S.C. §§ 206(a)(1), 207(a)(1)). The FLSA provides a right of action for employees to recover unpaid wages (including unpaid overtime compensation), liquidated damages, and reasonable attorneys' fees and costs from employers who fail to comply with the Act. 29 U.S.C. § 216(b). In this respect, the FLSA protects employees but does not protect independent contractors. *Schultz*, 466 F.3d at 305.

The FLSA includes exceptions that may be applicable in the present case. However, Defendant does not address Plaintiff's FLSA claims in either its Motion or Reply. "The application

of an exemption under the FLSA is 'a matter of affirmative defense on which the employer bears the burden of proof.'" *Jones v. Williams*, Civ. No. CCB-11-793, 2012 WL 4470239, at *4 (D. Md. Sept. 25, 2012) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974), *amended*, 2012 WL 6800786 (D. Md. Nov. 16, 2012), *aff'd sub nom. Jones v. Baltimore City Cmty. Coll.*, 520 F. App'x 213 (4th Cir. 2013). Accordingly, Defendant's Motion will be denied as to the federal wage claims.

Accordingly, Defendant's Motion will be denied as to Count IV.

## IV.    CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 20) will be GRANTED as to Count III and DENIED as to Counts I, II, and IV. Plaintiff's claims of Title VII race discrimination will be DISMISSED without prejudice. Defendant's Motion to Strike Plaintiff's Surreply (ECF No. 25) will be GRANTED.

A separate Order will issue.

May __30th__, 2024                          /S/
                                    _____
                                    Matthew J. Maddox
                                    United States District Judge